IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
    v.                      )       2:11cr191-MHT
                            )           (WO)
JASON TERRELL DAVENPORT     )

OPINION AND ORDER

With Amendment 782 in 2014, the United States Sentencing Commission revised the Sentencing Guidelines applicable to the drug-trafficking offense for which this court sentenced defendant Jason Terrell Davenport.  The Commission simultaneously promulgated Amendment 788, making Amendment 782 retroactive.  This court established a Retroactivity Screening Panel to determine whether defendants such as Davenport might be eligible for a sentence reduction.

Davenport's case was submitted for review, but the Panel was unable to reach a unanimous recommendation due to a disagreement over the applicable law.

## I. INTRODUCTION

In 2012, the court sentenced Davenport on one count of conspiracy to possess with intent to distribute cocaine base. *See* 21 U.S.C. § 846. The sentence was entered pursuant to a binding Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement ("Type-C agreement"), which permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case" and "binds the court once the court accepts the plea agreement." At the time of sentencing, after adjustments for minor role and acceptance of responsibility, Davenport's initial Guidelines range was 87 to 108 months, based on an offense level of 27 and a criminal history category of III. However, a mandatory-minimum sentence of 120 months applied. The plea agreement recommended a sentence of 63 months. The court granted the government's motion for a three-level downward departure for substantial assistance, which both reduced Davenport's total offense level to 24 and authorized the court to give a sentence

2

below the mandatory minimum.  The adjusted Guidelines range, starting from the original range of 87 to 108 months, was 63 to 78 months. Davenport was sentenced to 63 months.

Despite having been sentenced pursuant to a binding plea agreement, Davenport is eligible for a sentence reduction now only if he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ." 18 U.S.C. § 3582(c)(2). Recently, in *Hughes v. United States*, the Supreme Court concluded that defendants sentenced pursuant to a Type-C agreement are nonetheless eligible for a sentence reduction "so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." 138 S. Ct. 1765, 1775 (2018).

That is not Davenport's only hurdle to receiving a sentence reduction.  When he was originally sentenced, he was subject to a mandatory-minimum sentence of 120 months, which was entirely above his otherwise-applicable Guidelines range.  He was sentenced below the mandatory

minimum solely because the court granted the government's motion for a downward departure of three levels on the basis of substantial assistance, pursuant to United States Sentencing Commission, Guidelines Manual § 5K1.1 (Nov. 2016) (USSG) and 18 U.S.C. § 3553(e). In 2014, the Commission, weighing in on a circuit split, promulgated Amendment 780, which states that the defendant's Guidelines range should be calculated without regard to the mandatory minimum when the court departed below the minimum based on a substantial-assistance motion. On its face, the amendment, if applied, makes defendants in Davenport's shoes eligible for retroactive sentencing relief, because, in general, it asks courts on resentencing to look solely to the otherwise-applicable Guidelines range, not the mandatory minimum, when determining statutory eligibility for relief.

In *Koons v. United States*, released the same day as *Hughes*, the Supreme Court held that where five defendants were subject to mandatory-minimum sentences that exceeded their otherwise-applicable Guidelines ranges, and where

**4**

the district court "scrapped the ranges in favor of the mandatory minimums, and never considered the ranges again," the sentences were not "based on" the otherwise-applicable Guidelines ranges. 138 S. Ct. 1783, 1789 (2018). However, *Koons* specifically declined to reach the issue of whether a defendant subject to a mandatory-minimum sentence "can never be sentenced 'based on a sentencing range' that the Commission has lowered," because, as the opinion repeatedly emphasized, in none of the five consolidated cases before it "did the [district] court consider the original drug Guidelines ranges that it had earlier discarded." *Id.* at 1787, 1788 n.1 (quoting 18 U.S.C. § 3582(c)(2)).

As discussed later, however, the district court in Davenport's case did not simply discard the otherwise-applicable Guidelines range. Accordingly, this case poses the next logical question that the Supreme Court avoided in *Koons*: whether a defendant subject to a mandatory minimum that exceeds his otherwise-applicable Guidelines range was sentenced

"based on" that range for the purpose of § 3582(c)(2), where that range was in fact "part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes*, 138 S. Ct. at 1775.

The parties were ordered to brief the two issues necessary to rule on Davenport's eligibility for retroactive sentencing relief, albeit prior to the Supreme Court's rulings in *Hughes* and *Koons*: (1) whether Davenport is eligible for a reduction under § 3582(c)(2), although he was sentenced pursuant to a binding plea agreement; and (2) whether he is eligible for a reduction under § 3582(c)(2) and Amendment 780, although he was originally subject to a mandatory minimum that exceeded his Guidelines range.

The court concludes that Davenport is eligible for a sentence reduction. Davenport's original sentence was "based on" a subsequently lowered sentencing range, 18 U.S.C. § 3582(c)(2), despite the existence of a Type-C plea agreement, because the court's acceptance of that agreement was based on its determination that the

recommended sentence was compatible with the Guidelines, as explained in more detail later. Further, the court finds that the mandatory minimum does not impede his eligibility for relief under § 3582(c)(2). After careful consideration of the Supreme Court's decisions in *Koons*, *Hughes*, and related cases; the law in this circuit; the recent decisions in other circuits; and the record of sentencing in this case, this court concludes that the Sentencing Commission did not exceed its authority in promulgating Amendment 780 with regard to cases such as Davenport's, and that he is eligible for a reduction because he was in fact sentenced "based on" his applicable Guidelines range rather than the mandatory minimum.

Finally, the court finds that a sentence reduction is warranted in Davenport's case. Accordingly, the sentence of imprisonment of 63 months previously imposed on him (as reflected in the last judgment issued) is reduced to 51 months, or, in the event that he has served longer than he would have served on a 51-month sentence

factoring in good-time credit and any other factors relevant to the Bureau of Prisons' calculation, to a sentence of time served.

## II. TYPE-C AGREEMENT

The court first discusses Davenport's eligibility for a sentence reduction in light of the court's adoption of a binding plea agreement. Federal courts are forbidden to "modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), subject to a few narrow exceptions. The relevant exception here permits defendants whose Guidelines sentencing range has been lowered by a retroactive amendment, such as Amendment 782, to move for a sentence reduction. 18 U.S.C. § 3582(c)(2) provides:

> "[I]n the case of a defendant who has been sentenced to a term of imprisonment <u>based on</u> a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), ... the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if such

> a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission."

(Emphasis added).

At sentencing, the court accepted the parties' plea agreement pursuant to Rule 11(c)(1)(C), which permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, ... [a request which] binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). Because binding plea agreements allow the parties themselves to set the sentence (subject to the court's approval), the question is raised whether a defendant sentenced pursuant to such an agreement may be said to have been sentenced "based on" a Guidelines sentencing range such that he is eligible for retroactive relief under § 3582(c)(2).

The Supreme Court first answered that question in *Freeman v. United States*, 564 U.S. 522 (2011) (plurality opinion). Five Justices there agreed that the district court could reduce Freeman's sentence even though it had

originally sentenced him pursuant to a binding Type-C agreement, but the Justices differed in their reasoning.

The plurality, written by Justice Kennedy, concluded that, where the "judge's decision to accept the plea and impose the recommended sentence is ... based on the Guidelines," the defendant should be eligible to seek § 3582(c)(2) relief. *Id*. at 534. The judge's decision to accept the plea would "likely" be based on the Guidelines because district courts are required to evaluate the recommended sentence in light of the defendant's applicable sentencing range and "may accept an 11(c)(1)(C) agreement 'only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons.'" *Id.* at 529 (quoting USSG § 6B1.2 & cmt. (Nov. 2010)). That is, "[i]n every case the judge must exercise discretion to impose an appropriate sentence," discretion which, "in turn, is framed by the Guidelines." *Id*. at 525, 534.

The plurality rejected the approach in Justice Sotomayor's concurrence, which looked to the plea agreement to determine whether the agreed-upon sentence was "based on" the Guidelines. Instead, the plurality looked to the sentencing transcript, which revealed that the district judge first calculated the sentencing range and then considered the recommended sentence in relation to that range. *See id.* at 530. Because "[t]he court expressed its independent judgment that the sentence was appropriate in light of the applicable Guidelines range," the plurality concluded, "its decision was therefore 'based on' that range." *Id.* at 531.

Justice Sotomayor concurred in the judgment but differed in her approach to determining whether a sentence imposed pursuant to a Type-C agreement is "based on" the Sentencing Guidelines. Her opinion determined that "the term of imprisonment imposed by a district court pursuant to an agreement authorized by Federal Rule of Criminal Procedure 11(c)(1)(C) ... is 'based on' the agreement itself, not on the judge's calculation of the

11

Sentencing Guidelines." *Id.* at 534 (Sotomayor, J., concurring in the judgment). "Under this view, if a plea agreement 'call[s] for the defendant to be sentenced within a particular Guidelines sentencing range,' the acceptance of the agreement by the district court 'obligates the court to sentence the defendant accordingly, and there can be no doubt that the term of imprisonment the court imposes is 'based on' the agreed-upon sentencing range.'" *United States v. Hughes*, 849 F.3d 1008, 1012 (11th Cir. 2017) (quoting *Freeman*, 564 U.S. at 538 (Sotomayor, J., concurring)), *rev'd sub nom. Hughes v. United States*, 138 S. Ct. 1765 (2018). Alternatively, if a plea agreement "provide[s] for a specific term of imprisonment--such as a number of months--but also make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty," then "[a]s long as that sentencing range is evident from the agreement itself," the term of

imprisonment imposed is 'based on' that range." *Freeman*, 564 U.S. at 539 (Sotomayor, J., concurring).

In other words, Justice Sotomayor's controlling opinion required district courts to examine primarily the plea agreement itself, rather than the sentencing transcript, to determine whether the ultimate sentence was reached through Guidelines calculations. For a defendant sentenced pursuant to a binding plea agreement to be eligible for retroactive relief under that view, the agreement must either (1) specify a Guidelines range within which the defendant must be sentenced or (2) specify a particular sentence and provide other indications that the sentence was derived from Guidelines calculations.

The Eleventh Circuit Court of Appeals previously concluded that Justice Sotomayor's concurrence in *Freeman* was controlling, because it relied on the narrowest ground of agreement. *See Hughes*, 849 F.3d at 101. However, the Supreme Court reversed, and Justice Sotomayor joined the four Justices in the *Freeman*

plurality to adopt the *Freeman* plurality's approach. Under that approach, as further elaborated in *Hughes*, "a sentence imposed pursuant to a Type-C agreement is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes*, 138 S. Ct. at 1775. By contrast, "[i]f the Guidelines range was not 'a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement,' then the defendant's sentence was not based on that sentencing range, and relief under § 3582(c)(2) is unavailable.'" *Id.* at 1776 (quoting *Freeman*, 564 U.S at 530). As the *Freeman* plurality indicated, it is therefore "the reasons for the sentence that the district court imposed, not the reason for the parties' plea agreement," that matter under the statute. *Id.* Because "the Guidelines are a district court's starting point, [] when the Commission lowers a defendant's Guidelines range the defendant will be eligible for relief under § 3582(c)(2) *absent clear*

*demonstration, based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines." Id.* (emphasis added) (citing *Koons*, 138 S. Ct. at 1788-90).

*Hughes* explained that, under this approach, as a "general rule [], in most cases, a defendant's sentence will be 'based on' his Guidelines"; "in the usual case the court's acceptance of a Type-C agreement and the sentence to be imposed pursuant to that agreement are 'based on' the defendant's Guidelines range." *Id.* at 1776. Indeed, the Court observed, the intervening decisions between *Freeman* and *Hughes* "confirm that the Guidelines remain a basis for almost all federal sentences." *Id.* at 1777.

Applying this framework, the Court noted that the district court there accepted the Type-C agreement after concluding that the recommended sentence was consistent with the Guidelines and then calculated Hughes's sentencing range and imposed a sentence that it deemed "compatible" with the Guidelines. *Id.* at 1778.

15

Accordingly, it concluded that Hughes was sentenced based on his Guidelines range.

Whether Davenport was sentenced "based on" the Sentencing Guidelines, despite the existence of a Type-C agreement, is therefore relatively straightforward after *Hughes* and results in a clear "yes."

At sentencing, the court spent considerable time ensuring that the recommended sentence in the Type-C agreement was compatible with Davenport's Guidelines sentencing range. Specifically, the parties initially represented that the recommended sentence of 63 months, in light of Davenport's criminal history category of III, constituted a downward departure of four offense levels after factoring in acceptance of responsibility and a minor role adjustment. The court then brought the parties back in chambers and heard extensive argument as to whether that level of departure was appropriate based on Davenport's cooperation. *See* Sentencing Tr. at ___ (pin cite unavailable because transcript in draft form). After a pause for deliberation, the court announced that

16

it would grant a reduction of four offense levels--the amount that all parties believed at that time was necessary to square the plea agreement with Davenport's Guidelines range--and explained its reasons for doing so in terms of his cooperation. It then stated it would accept the plea agreement, resumed the proceedings in open court, and then asked the U.S. Probation Office to calculate Davenport's Guidelines range after the downward departure, which Probation stated was 63-78 months. Finally, the court imposed the recommended sentence of 63 months.

To be sure, as discussed in more detail later, the court later indicated in open court, and the final judgment reflected, a downward departure of three, not four, offense levels was correct. In any case, however, the court's efforts to ensure that a departure required by the plea agreement would be consistent with the Guidelines makes abundantly clear that its exercise of discretion in accepting the agreement was framed by the Guidelines. *See Freeman*, 564 U.S. at 525, 534.

In other words, the court verified at length that Davenport's recommended sentence was justified in reference to the Guidelines, calculated the Guidelines sentencing range, and imposed the recommended sentence that fell at the bottom of the Guidelines range. Davenport's Guidelines range was clearly "part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes*, 138 S. Ct. at 1775. Davenport's sentence was therefore "based on" his Guidelines sentencing range, notwithstanding the fact that it was imposed pursuant to a Type-C agreement.

Moreover, it should be added that the record not only reflects that the sentence of 63 months met the *Hughes* requirement that it be "part of the framework the *district court* relied on in imposing the sentence or accepting the agreement," 138 S. Ct. at 1775 (emphasis added), but the record also reflects that the *parties* considered and applied the Guidelines in fashioning the recommendation for it. Government counsel at the sentencing hearing expressly stated that the 63-month

18

recommendation was "tied to the guidelines." Sentencing Tr. at ____ (pin cite unavailable because transcript in draft form).[1]   Looking at the 63-month sentence from different angles, the court concludes that it was a product of the Guidelines.


### III. MANDATORY MINIMUM

The conclusion on the plea agreement issue does not end the court's inquiry into Davenport's statutory eligibility for retroactive sentencing relief.  Davenport was originally subject to a 120-month mandatory-minimum

----

1.  The following exchange occurred between the court and counsel for the government:

"THE COURT: ... But when you were coming at the 63, were you just coming at the 63 based on criminal history and guidelines, or were you just coming at the 63 saying, I think this is a fair sentence based on what he's done?

"[GOVERNMENT COUNSEL]: It was certainly tied to the guidelines and to the assistance."

Sentencing Tr. at ____ (pin cite unavailable because transcript in draft form)).

sentence, which exceeded his otherwise-applicable Guidelines range of 87 to 108 months. However, the court was authorized to sentence Davenport below the mandatory minimum because the government moved for a downward departure to reward Davenport for his substantial assistance. *See* Gov't Motion for Downward Departure (doc. no. 304); *see also* 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.").

Moreover, as stated, the Sentencing Commission, in 2014 and weighing in on a circuit split, promulgated Amendment 780, which states that the defendant's Guidelines range should be calculated without regard to the mandatory minimum when the court departed below the minimum based on a substantial-assistance motion.

Prior to the Supreme Court's decision in *Koons*, in cases like this one--where the defendant was originally subject to a mandatory minimum that exceeded his otherwise-applicable Guidelines range but became eligible for a sentence below the minimum on account of a government motion for substantial assistance--lower courts had grappled with at least two issues. First, to be eligible for a sentencing reduction under § 3582(c)(2), even though the defendant was subject to a mandatory minimum, he must have been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Of course, Amendment 782 lowered only the Guidelines range applicable to the offense, and not the statutory mandatory minimum. Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

Two circuit courts, including the opinion below in *Koons*, concluded that defendants subject to a mandatory minimum who received a below-minimum sentence based on

substantial assistance are never eligible for § 3582(c)(2) sentencing relief, because they were sentenced based on the mandatory minimum and their substantial assistance rather than the otherwise-applicable Guidelines range. *See United States v. Koons*, 850 F.3d 973 (8th Cir. 2017), *aff'd on different grounds*, 138 S. Ct. 1783 (2018); *United States v. C.D.*, 848 F.3d 1286 (10th Cir. 2017). A district court in this district has reached the same conclusion. *See United States v. Sawyer*, 225 F. Supp. 3d 1314, 1325 (M.D. Ala. 2016) (Watkins, C.J.). Moreover, the court in *Sawyer* concluded that the Sentencing Commission exceeded its statutory authority in promulgating Amendment 780, because that amendment "flies in the face of Congress's minimum penalties for specified drug crimes." *Id*. at 1325.

In contrast, the Fourth Circuit Court of Appeals, in addition to the Third Circuit and D.C. Circuit Courts of Appeals' opinions that preceded and were generally

adopted by Amendment 780,[2] applied Amendment 780 to conclude that defendants who receive downward departures based on substantial assistance are generally eligible for sentencing relief under § 3582(c)(2). *See United States v. Williams*, 808 F.3d 253 (4th Cir. 2015). In so deciding, the court relied on the Sentencing Commission's authority to overrule circuit precedent and courts' obligation to adhere to the Commission's policy statements, but it did not address whether a defendant sentenced in these circumstances was *originally* sentenced "based on" a subsequently lowered Guidelines range.

The Ninth Circuit Court of Appeals adopted an intermediate approach, holding that Amendment 780 satisfies § 3582(c)(2)'s requirement that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," but that a court must also then engage in a case-by-case analysis

_____

2. *See In re Sealed Case*, 722 F.3d 361, 368 (D.C. Cir. 2013); *United States v. Savani*, 733 F.3d 56 (3d Cir. 2013); USSG App. C, Amdt. 780 (Supp. Nov. 2014) ("generally adopt[ing]" the approach in those cases).

as in *Freeman* to determine that the first sentence was "based on" the Guideline range initially calculated, despite the mandatory minimum. *See United States v. Rodriguez-Soriano*, 855 F.3d 1040, 1046 (9th Cir. 2017) (citing *United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016) (en banc), the leading case in that circuit interpreting *Freeman*). There, "the sentencing judge's decision about the extent of the substantial-assistance departure was not based on or affected by the guideline range that would have applied in the absence of the statutory mandatory minimum." *Id.* at 1045. Accordingly, the defendant was not eligible for relief under § 3582(c)(2). However, the defendant might have been eligible for a reduction "[h]ad the circumstances of sentencing been different," *id.* at 1046, that is, had the sentencing decision in fact been based on the otherwise-applicable Guidelines range.

The Supreme Court in *Koons* held that where the defendants were subject to mandatory-minimum sentences that exceeded their otherwise-applicable Guidelines

24

ranges, and where the district court "scrapped the ranges in favor of the mandatory minimums, and never considered the ranges again," the resulting sentences were not "based on" the otherwise-applicable Guidelines ranges. 138 S. Ct. at 1788.

*Koons* foreclosed the Fourth Circuit's approach in *Williams*, under which a defendant in the above circumstances is always eligible for sentencing relief in light of Amendment 780, regardless of whether their sentence was in fact "based on" the otherwise-applicable Guidelines range. The Supreme Court specifically rejected the defendants' argument, in line with that approach, that a district court's sentence is always based on that range because "the Guidelines ranges serve as 'the starting point for every sentencing calculation in the federal system ....'" *Id.* at 1789 (quoting *Peugh*, 569 U.S. 530, 542). "What matters," it explained,

> "is the role the Guidelines range played in the selection of the sentence eventually imposed--not the role that the range played in the initial calculation. And here, while consideration of the ranges may have served as

the 'starting point' in the sense that the court
began by calculating those ranges, the ranges
clearly did not form the 'foundation' of the
sentences ultimately selected. *See Hughes,* ---
U.S, at ---- – ----, 138 S. Ct., at 1775 - 1777,
*ante.* In constructing a house, a builder may
begin by considering one design but may
ultimately decide to use entirely different
plans. While the first design would represent
the starting point in the builder's
decisionmaking process, the house finally built
would not be 'based on' that design. The same is
true here. Petitioners' sentences were not
'based on' Guidelines ranges that the sentencing
judge discarded in favor of mandatory minimums
and substantial-assistance factors."

*Id.*

While *Koons* thus rejected the Fourth Circuit's
approach of categorical eligibility for relief, it did
not decide between the Eighth and Tenth Circuit's
approaches on the one hand, and the Ninth Circuit's
approach on the other. That is, the Court declined to
reach whether a defendant subject to a mandatory-minimum
sentence "can never be sentenced 'based on a sentencing
range' that the Commission has lowered," because, as it
repeatedly emphasized, in none of the five consolidated
cases before it "did the [district] court consider the

original drug Guidelines ranges that it had earlier discarded." *Id.* at 1787, 1788 n.1 (quoting § 3582(c)(2)). In other words, it declined to hold that, by operation of law, the otherwise-applicable Guidelines range is "trumped" by the mandatory minimum, such that a defendant's sentence cannot then be "based on" the former. Rather, as in *Hughes*, the Court looked to what the district court *in fact* considered in deciding on the ultimate sentence and found that in the cases before it the Guidelines range had been fully "discarded": "[Petitioners'] sentences were not 'based on' the lowered Guidelines ranges because the District Court did not consider those ranges in imposing its ultimate sentences. On the contrary, the court scrapped the ranges in favor of the mandatory minimums, and never considered the ranges again; as the court explained, the ranges dropped out of the case." *Id.* at 1788.

An analysis of the sentencing transcripts in *Koons* further elucidates the nature of the district court's actions described by the Court. There, after calculating

each defendant's otherwise-applicable Guidelines range, the court explained that the ranges were trumped by the mandatory minimum. *See, e.g.*, *Koons*, App. at 148 ("[T]he advisory guideline range would be 168 to 210 months. However, there's a mandatory minimum [of 240 months]. So we start at a sentence of 240 months."); *id.* at 197 ("The advisory guideline range of 70 to 87 months is trumped by the mandatory minimum.... I'm going to start at the mandatory minimum of 120 months."). It then framed the sentencing discussion in terms of the appropriate percentage of downward departure from the mandatory minimum, based on the substantial assistance factors, and without reference to the discarded ranges. Indeed, the parties argued in terms of such percentages and not in terms of "offense levels" or Guidelines ranges. Ultimately, the court imposed sentences of 25 % to 45 % below the mandatory minimums. *See, e.g.*, *id.* at 116 ("I'm going to grant a 25 percent reduction and reduce the sentence from 240 months down to 180 months."); *id.* at 153 ("I'm going to impose a sentence of 132 months

which is a 45 percent reduction."). In other words, as the Supreme Court stated, "the [district] court scrapped the ranges in favor of the mandatory minimums, and never considered the ranges again." *Koons*, 138 S. Ct. at 1788. Indeed, there was a "clear demonstration, based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines." *Hughes*, 138 S. Ct. at 1776.

Here, as already discussed in relation to the Type-C agreement, Davenport's otherwise-applicable sentencing range did not wholly "drop out" of consideration but, in fact, played a relevant part in the court's acceptance of the plea agreement and imposition of a sentence. To use the construction analogy in *Koons*, it is as if a builder began by considering one design (the initial Guidelines range), and was given a different design (the mandatory minimum and substantial assistance factors), but rather than fully discarding the first design, the builder still ended up using it to lay the foundation. To determine whether a defendant in such circumstances

29

is eligible for sentencing relief under § 3582(c)(2), the court must wade into the above fray, and reach the issue that the Supreme Court reserved in *Koons*. The court concludes that a defendant whose otherwise-applicable Guideline range is exceeded by a mandatory-minimum sentence, and who receives a downward departure based on substantial assistance, is eligible for relief under § 3582(c)(2) where the otherwise-applicable Guidelines range was "part of the framework the district court relied on in imposing the sentence or accepting [an] agreement." *Hughes v. United States*, 138 S. Ct. at 1775. Moreover, the court concludes that Amendment 780 does not exceed the authority of the Sentencing Commission as applied to such a defendant. Because Davenport was indeed sentenced based on his otherwise-applicable Guidelines range, he is eligible for sentencing relief under § 3582(c)(2).

## A. Whether the Mandatory Minimum Precludes a Sentence "Based On" the Otherwise-Applicable Guidelines Range

The first issue is whether, by operation of law, Davenport's mandatory minimum "trumped" or replaced his otherwise-applicable Guidelines range, such that his sentence could not have been "based on" that range regardless of what the district court in fact considered in imposing the sentence. Interrelated with this issue is whether district courts must, when confronted with a defendant whose initial Guidelines range is below an applicable mandatory minimum, depart downward *starting from* the mandatory minimum rather than the otherwise-applicable Guidelines range. If a court may depart downward using the otherwise-applicable Guidelines range as a starting point, then the mandatory minimum has not fully trumped that range, and that range may still be a basis for the defendant's sentence.

*Koons* explicitly left these questions open. The Court held that neither § 3553(e) nor the Guidelines *require* a sentencing court to consider the

otherwise-applicable Guidelines range in calculating a downward departure and that the district court thus acted properly by discarding the Guidelines range and departing downward from the mandatory minimum. *See id.* at 1789-90. However, it took "no view" as to whether courts *may* consider the initial Guidelines range in calculating a downward departure. *Id.* at 1789 n.3.

Neither does the law of the Eleventh Circuit directly address these questions, at least following the promulgation of Amendment 780. Prior to that amendment, Davenport would not have been eligible for retroactive relief in this circuit. Davenport's 120-month statutory mandatory minimum would have become his "Guideline sentence" pursuant to the USSG § 5G1.1 ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."), and a reduction would have been precluded under the Commission's version of the policy statement in Guideline 1B1.10 before Amendment 780. *See*

32

USSG § 1B1.10 cmt. n.1(A) (Nov. 2011) ("[A] reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with th[e] policy statement if ... an amendment ... is applicable to a defendant but *the amendment does not have the effect of lowering the defendant's applicable guideline range because of* the operation of another guideline or statutory provision (*e.g.*, *a statutory mandatory minimum term of imprisonment*)." (emphasis added)).

Accordingly, Davenport would have been considered to have been sentenced "based on" a Guidelines range determined by his statutory mandatory-minimum sentence, not "based on a sentencing range that has subsequently been lowered." Therefore, Amendment 782 would not have entitled Davenport to sentencing relief. *See United States v. Glover*, 686 F.3d 1203, 1208 (11th Cir. 2012); *United States v. Williams*, 549 F.3d 1337 (11th Cir. 2008).

In *Glover,* the Eleventh Circuit held that a defendant who initially was subject to a mandatory-minimum sentence, but ultimately received a below-minimum sentence based on substantial assistance, is not eligible for a reduction under § 3582(c)(2) when the Guidelines range that would have applied absent the mandatory minimum was subsequently and retroactively reduced. *See Id.* at 1207-08. The court explained that the low end of such a defendant's Guidelines range was determined by the mandatory minimum, which, pursuant to Guideline 5G1.1(b), "trumped" any portion of the otherwise-applicable Guidelines range below it. *Id.* at 1206. Relying on the Sentencing Guideline's then-current policy statement on sentencing reductions, *Glover* concluded that a reduction is unavailable in such cases because the relevant "amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of

34

imprisonment)." *Id.* at 1206 (quoting USSG § 1B1.10 cmt.
n. 1(A) (emphasis omitted)).

Similarly, the Eleventh Circuit held earlier in *Williams* that a statutory minimum that exceeds an otherwise-applicable Guidelines range

> "effectively displaces the shorter sentence and becomes the guideline sentence for that individual. *See* U.S.S.G. § 5G1.1(b). The defendant's resulting sentence would thus be based on this new guideline sentence, rather than on the sentencing range for the original offense, and any changes in the range for the original offense would not affect it. Any downward departure would thereby be *from the mandatory minimum rather than from the base offense level*."

*Williams*, 549 F.3d at 1340 (emphasis added).

By contrast, in the approach that was later adopted by Amendment 780, the D.C. Circuit explained that "[b]ecause of the government's substantial assistance motion, *no mandatory minimum was at work* when the district court sentenced the [defendant]." *In re Sealed Case*, 722 F.3d 361, 368 (D.C. Cir. 2013) (emphasis added). In other words, a substantial-assistance motion "waives" the statutory minimum and permits the district

court to depart downward from the defendant's applicable Guidelines range, rather than necessarily calculating a reduction from the level of the mandatory minimum. *See* USSG § 2D1.1 cmt. 24 (explaining that "a mandatory minimum may be 'waived' and a lower sentence imposed" based on a defendant's substantial assistance).

Previously, this court concluded that Amendment 780, not *Glover*, controls. *See United States v. Morris*, 147 F. Supp. 3d 1349, 1351 (M.D. Ala. 2015) (Thompson, J.); *see also United States v. Villegas*, 651 F. App'x 909, 911 n.1 (11th Cir. 2016) (unpublished) ("[Amendment 780] clarified ... that, where an offender provides substantial assistance to the government so as to become eligible for a sentence below a statutory mandatory minimum, a court should not consider the mandatory minimum when ruling on the offender's § 3582(c)(2) motion."). This is true for two reasons: first, *Glover*'s conclusion derives entirely from its interpretation of the version of Guideline 1B1.10 before Amendment 780. As such, now that the text of the policy statement on

sentencing reductions has changed, *Glover*'s analysis is inapposite.[3]  *See Morris*, 147 F. Supp. 3d at 1351.

---

3. In its Reason for Amendment, the Sentencing Commission made clear that it intended to resolve a circuit split regarding "when, if at all, § 1B1.10 provides that a statutory minimum continues to limit the amount by which a defendant's sentence may be reduced under 18 U.S.C. § 3582(c)(2) when the defendant's original sentence was below the statutory minimum due to substantial assistance." USSG App. C, Amdt. 780 (Supp. Nov. 2014). It went on to expressly reject the decision in *Glover* and "generally adopt[]" the contrary view taken by the Third Circuit and D.C. Circuit in order to "ensure[] that defendants who provide substantial assistance to the government in the investigation and prosecution of others have the opportunity to receive the full benefit of a reduction that accounts for that assistance." *Id.*

Indeed, commentary to the revised policy statement addresses precisely the situation present in this case: "Defendant B is subject to a mandatory minimum term of imprisonment of 120 months. The original guideline range at the time of sentencing (as calculated on the Sentencing Table) was 108 to 135 months, which was restricted by operation of § 5G1.1 to a range of 120 to 135 months. *See* USSG § 5G1.1(c)(2). The court imposed a sentence of 90 months pursuant to a government motion to reflect the defendant's substantial assistance to authorities. The court determines that the amended guideline range as calculated on the Sentencing Table is 87 to 108 months. Ordinarily, § 5G1.1 would operate to restrict the amended guideline range to precisely 120 months, to reflect the mandatory minimum term of imprisonment. *See* USSG § 5G1.1(b). For purposes of this (continued...)

Second, the Commission's policy statements, including Guideline 1B1.10, are binding on courts. *See id.* at 1351-52 (citing *Dillon v. United States,* 560 U.S. 817, 824–28 (2010), which emphasized the "substantial role Congress gave the Commission with respect to sentence-modification proceedings" in holding that § 3582(c)(2) "requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.").

As with *Glover*, *Williams* was superseded by Amendment 780. The Eleventh Circuit concluded in *Williams* that the defendant there was ineligible for a reduction based on USSG § 5G1.1(b), under which the mandatory minimum replaced the initial Guidelines sentence. *Williams* continued in dicta to suggest that § 3553(e) as well as Guideline 1B1.10 would require courts to calculate

---

policy statement, however, the amended guideline range is considered to be 87 to 108 months (*i.e.*, unrestricted by operation of § 5G1.1 and the statutory minimum of 120 months)." USSG § 1B1.10(c) cmt. n. 4(b).

departures starting from the mandatory minimum and not the otherwise-applicable Guidelines range. However, *Williams*'s holding relies upon the pre-amendment Guideline 1B1.10 and not upon an independent interpretation of § 3553(e). *See United States v. Burkett*, 329 F. App'x 894, 896 (11th Cir. 2009) (unpublished) (describing *Williams* as holding, based on the "operation of U.S.S.G. § 5G1.1(b)," that a district court lacked authority to reduce a sentence where a mandatory minimum "displaced" a Guidelines sentencing range that was lower); *see also United States v. Hope*, 642 F. App'x 961, 965 n.3 (11th Cir. 2016) (unpublished) (acknowledging that Amendment 780 is contrary to *Williams*). Accordingly, now that Amendment 780 has altered Guideline 1B1.10 such that Guideline 5G1.1 is inoperative in sentence-reduction cases such as Davenport's, the analysis in *Williams*, like that in *Glover*, is inapposite. Therefore, Amendment 780's revision of Guideline 1B1.10 is controlling, assuming--as discussed below--that it is consistent with

statute. *See Dillon*, 560 U.S. at 827 (noting that § 3582(c)(2) "requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized").

Whether a district court was initially required to depart downward from the mandatory minimum may, however, simply be beside the point, in light of the limited scope of § 3582(c)(2) proceedings. The Supreme Court has made clear that § 3582(c)(2)'s "narrow scope" authorizes "only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 826. Because "a sentencing adjustment undertaken pursuant to Section 3582(c)(2) does not constitute a de novo resentencing," "*all* original sentencing determinations remain unchanged with the sole exception of the guideline range that has been amended since the original sentencing." *United States v. Bravo*, 203 F.3d 778, 781 (11th Cir. 2000) (emphasis in original); *see also United States v. Carter*, 500 F.3d 486, 490 (6th Cir.

2007) ("[W]hen a motion titled as a § 3582 motion otherwise attacks the petitioner's underlying conviction or sentence, that is an attack on the merits of the case and should be construed as a § 2255 motion.").  In other words, the operative inquiry for eligibility under § 3582(c)(2) is limited to whether "a defendant ... has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered," not whether the defendant *should* have been sentenced based on that sentencing range.  Accordingly, even assuming that the district court should have fully discarded the otherwise-applicable Guidelines range and departed from the mandatory minimum, a defendant may nevertheless be eligible for § 3582(c)(2) relief if the court erred and failed to do so.  To hold otherwise would be to allow a form of collateral review not authorized by that statute--review that is properly pursued on appeal, or by a defendant through § 2255 proceedings, if permitted.

Moreover, holding that individuals in Davenport's position are eligible for a sentence reduction is

consistent with the fact-based approach to § 3582(c)(2) adopted in *Hughes*.  The Court Supreme there made clear that "based on" under § 3582(c)(2) refers to *the actual considerations and decision-making process* of the district judge; it is an historical inquiry, not an abstract or theoretical one.  *See Hughes*, 138 S. Ct. at 1776 ("The statutory language points to the reasons for the sentence that the district court imposed.... [T]he defendant will be eligible for relief under § 3582(c)(2) absent clear demonstration*, based on the record as a whole*, that the court *would have imposed the same sentence* regardless of the Guidelines." (emphasis added)).[4]  To hold that "based on" with regard to a Type-C agreement refers to the district judge's actual reasons

_____

4.  Indeed, Justice Sotomayor's concurrence in *Freeman*, which was later overruled in *Hughes*, also interpreted § 3582(c)(2) in terms of the actual, historical reasons for a given sentence, except that it would have instructed courts to scrutinize the plea agreement for the parties' reasons in arriving at that sentence rather than the sentencing judge's reasons in accepting the agreement and imposing the sentence. *See Freeman*, 564 U.S. at 534-39 (Sotomayor, J., concurring).

for a sentence, while "based on" with regard to a mandatory minimum refers to what the sentence as a matter of law was or should have been based on, would be to ascribe two different meanings to the same statutory language. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005) (Scalia, J.) (rejecting an interpretation of a statute because it "would establish within our jurisprudence, beyond the power of Congress to remedy, the dangerous principle that judges can give the same statutory text different meanings in different cases"). In addition, in cases like Davenport's that involve both a Type-C agreement and a mandatory minimum that exceeds the initial Guidelines range, this interpretation would produce absurd and contradictory results: even if a *Hughes* analysis of the plea agreement shows that the defendant was sentenced "based on" his or her otherwise-applicable Guidelines range, the operation of a mandatory minimum would be deemed to establish that this same defendant *was not* sentenced "based on" that Guidelines range. *See Griffin v. Oceanic Contractors,*

*Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." (citing *United States v. Am. Trucking Ass'ns*, 310 U.S. 534 (1940))). The historical, record-driven approach adopted in *Hughes* therefore supports the conclusion that defendants who were subject to a mandatory minimum that exceeded their otherwise-applicable Guidelines range, but who were in fact sentenced based on that range, were sentenced "based on" that range for the purposes of § 3582(c)(2), notwithstanding the mandatory minimum.

In addition, such an interpretation is consistent with § 3582(c)(2)'s purpose of "giv[ing] the defendant an opportunity to receive the same sentence he would have received if the guidelines that applied at the time of his sentencing had been the same as the guidelines that applied after the amendment." *Glover*, 686 F.3d at 1206. *See also United States v. Tolliver*, 659 F. App'x 560, 563 n.2 (11th Cir. 2016) (unpublished) ("[T]he overarching

purpose of § 3582(c)(2) is to sentence a defendant as if the retroactively changed guideline was in place at the time of the defendant's original sentencing.") (citing *Glover*, 686 F.3d at 1206). Assuming that a defendant who provided substantial assistance was in fact originally sentenced (either through a binding plea agreement or otherwise) based on the otherwise-applicable Guidelines range and without regard to the statutory mandatory minimum, resentencing that defendant "as if the retroactively changed guideline was in place" requires the court to again disregard the statutory minimum, as Amendment 780 directs. Resentencing defendants according to the proper counterfactual--that is, as if the amended Guidelines range had been in place--requires that defendants be eligible for relief "to the extent the prisoner's Guidelines range was a relevant part of the framework the judge used," *Hughes*, 138 S. Ct. at 1778, even where a mandatory minimum applied.

## B. The Sentencing Commission's Authority
## to Promulgate Amendment 780

The second issue raised by the courts that have rejected the § 3582(c)(2) eligibility of defendants who received downward departures below mandatory minimums based on substantial assistance is whether--assuming that Amendment 780 would make those individuals eligible for sentencing relief--the Sentencing Commission exceeded its authority in promulgating that amendment.

As the court in *Sawyer* explained, "Where a federal crime carries a statutory mandatory minimum sentence, only Congress can make an exception to its imposition.... Congress has done so, for instance, in § 3553(e) where there is a government motion seeking a downward departure from a mandatory minimum based upon the defendant's substantial assistance."  225 F. Supp. 3d at 1325. *Sawyer* concluded that Amendment 780 exceeded the Sentencing Commission's authority because, in "cast[ing] aside statutorily required minimum sentences in favor of a lower amended guideline range," it "flies in the face

of Congress's minimum penalties for specified drug crimes." *Id.*

Amendment 780 poses no problem with regard to statutory mandatory minimums as identified in *Sawyer* for two reasons, either of which is sufficient to save the amendment. First, according to the waiver theory discussed earlier, the government's § 3553(e) motion "waives" the application of a mandatory minimum. *See supra* Part III.A. Although any downward departure must then be based on the defendant's cooperation and the substantial-assistance factors, *see United States v. Aponte*, 36 F.3d 1050 (11th Cir. 1994) (per curiam), the fact that the mandatory minimum has been "waived" means that the district court is free to use the otherwise-applicable Guidelines range as a starting point. Amendment 780 concerns only those defendants who have received downward departures based on a § 3553(e) substantial-assistance motion. The amendment does not "supplant a statutory mandatory minimum," *Sawyer*, 225 F. Supp. 3d at 1325, for the simple reason that, due to the

government's § 3553(e) motion, the mandatory minimum is no longer in place.

Second, even if the waiver theory is incorrect--meaning that the district court erred at the original sentencing by disregarding the mandatory minimum to depart downward starting from the otherwise-applicable Guidelines range--Amendment 780 does not contradict statutory mandatory minimums, because § 3582(c)(2) proceedings authorize an adjustment, albeit "only a limited [one] to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 826; *see supra* Part III.A. So long as a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," § 3582(c)(2) empowers courts to reduce the sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). This section does not authorize

courts to modify sentences only if they were lawful as
originally imposed, or to impose amended sentences only
if they would have been lawful if initially imposed. If
that were true, then the application of this section
would be limited by a kind of general collateral review.
The limited statutory grant of power in
§ 3582(c)(2)--which asks only that courts resentence
defendants as if the amended Guidelines were in place,
and with consideration of the § 3553(a) factors, to the
extent applicable--supersedes and removes any potential
conflict between Amendment 780 and congressionally
mandated minimum sentences.

In *Koons*, the Court confronted whether § 3582(c)(2),
not the mandatory minimums, was a statutory barrier to
the amendment. The Court reasoned:

> "[T]he Commission's policy statement cannot
> alter § 3582(c)(2), which applies only when a
> sentence was 'based on' a subsequently lowered
> range. The Sentencing Commission may limit the
> application of its retroactive Guidelines
> amendments through its 'applicable policy
> statements.' *Dillon v. United States,* 560 U.S.
> 817, 824-826, 130 S. Ct. 2683, 177 L.Ed.2d 271
> (2010). But policy statements cannot make a

49

> defendant eligible when § 3582(c)(2) makes him
> ineligible. *See id.,* at 824-825, 130 S. Ct. 2683.
> In short, because petitioners do not satisfy §
> 3582(c)(2)'s threshold 'based on' requirement,
> the Commission had no power to enable their
> sentence reductions."

138 S. Ct. at 1790.

Here, however, the fact that a defendant was actually sentenced "based on" the otherwise-applicable Guidelines range once more makes all the difference. As discussed earlier, when a defendant was sentenced based on that range, § 3582(c)(2)'s initial "based on" requirement poses no problem to the application of Amendment 780. Nothing in *Koons* suggests that the Commission did not have the authority to promulgate Amendment 780, assuming it would be properly applied to sentences "based on" a subsequently lowered range. *See* 138 S. Ct. at 1790. The fact that the statute restricted the amendment's range of application did not mean that the statute rendered the amendment invalid.

In addition, Amendment 780 is also consistent with Congress's goal of promoting defendants' cooperation with

the government by "ensur[ing] that defendants who provide substantial assistance to the government in the investigation and prosecution of others have the opportunity to receive the full benefit of a reduction that accounts for that assistance." USSG App. C, Amdt. 780 (Supp. Nov. 2014).

Moreover, as the Fourth Circuit has observed, a contrary result would create a sentencing disparity that favors cooperating defendants with Guidelines ranges above their statutory minimums due to such factors as extensive criminal histories or severe offense conduct. Those defendants would be eligible for sentence reductions while those with Guidelines ranges entirely below their minimums would be ineligible for a reduction. *See Williams*, 808 F.3d at 261-62. Such a disparity is inconsistent with Congress's purpose of punishing defendants with higher Guidelines ranges more severely than those with lower ranges.

## C. Other Considerations

The case law of this circuit suggests one additional way in which Amendment 780 might exceed the Sentencing Commission's authority by contradicting a statute. In *Unites States v. Aponte*, 36 F.3d 1050 (11th Cir. 1994) (per curiam), the court held that a § 3553(e) downward departure must be based on a defendant's substantial assistance and not on any other mitigating factors. One might contend that a downward departure in a § 3582(c) sentence reduction is based on the Commission's lowering of the applicable Guidelines range and not based on a defendant's substantial assistance. Yet because the court's authority and impetus for the downward departure remains the defendant's substantial assistance, so as to give the defendant "the same sentence he would have received if the guidelines that applied at the time of his sentencing had been the same as the guidelines that applied after the amendment," *Glover*, 686 F.3d at 1206, the reduced sentence is necessarily based on the defendant's assistance to the government, adjusted to

reflect a change in the Guidelines. Indeed, as the Sentencing Commission explained, the purpose of granting such a reduction is to "ensure[] that defendants who provide substantial assistance to the government in the investigation and prosecution of others have the opportunity to receive the full benefit of a reduction that accounts for that assistance." USSG App. C, Amdt. 780 (Supp. Nov. 2014). The defendant's reduced sentence is not based on any other mitigating factor or characteristic of the defendant, such as the factors enumerated in 18 U.S.C. § 3553(a), about which the court in *Aponte* was concerned. *Aponte* therefore poses no problem for Amendment 780.

Finally, the court notes that the above holding, unlike the Fourth Circuit's position of categorical eligibility that was rejected by the Supreme Court in *Koons*, creates no undue "windfall" for defendants seeking a sentence reduction. In cases such as *Koons*, where the district court did not in fact consider the otherwise-applicable Guidelines range, sentencing a

defendant "as if the retroactively changed guideline was in place at the time of the defendant's original sentencing," *Tolliver*, 659 F. App'x at 563 n.2, requires imposing *the same sentence*. That is, if the court truly disregarded the Guidelines range and considered only the mandatory minimum and substantial assistance factors--for instance, if the court decided to give the defendant a 25 % reduction from the mandatory minimum--then a difference in the Guidelines range would have made no difference in the ultimate sentence. Granting a § 3582(c)(2) reduction under such circumstances, as several courts strenuously resisted even prior to the decision in *Koons*, would therefore in some sense grant a gratuitous "windfall" to the defendant. However, where a defendant's sentence was in fact based on the otherwise-applicable Guidelines range, then a difference in the Guidelines range would have made a difference, and there is no windfall.

### D. Davenport Was Sentenced Based On His Otherwise-Applicable Guidelines Range

Having concluded that defendants who were subject to a mandatory minimum that exceeded their otherwise-applicable Guidelines range may be eligible for § 3582(c)(2) sentencing relief if they were in fact sentenced based on that range, the court now turns to whether, under *Hughes*, Davenport was sentenced based on his Guidelines range--that is, whether "[that] range was part of the framework the district court relied on in imposing the sentence or accepting the [plea] agreement." *Hughes*, 138 S. Ct. at 1775. Although the court has already concluded with regard to the plea agreement that Davenport was sentenced based on his Guidelines range, it now emphasizes that conclusion with regard to the mandatory minimum issue.

In *Koons*, as discussed above, the district court calculated each defendant's otherwise-applicable Guidelines range, but then fully discarded those ranges. It then framed the sentencing discussion in terms of the

appropriate percentage of downward departure from the mandatory minimum--not in terms of "offense levels" or Guidelines ranges. Ultimately, the court imposed sentences of 25 % to 45 % below the mandatory minimums. In sum, "the [district] court scrapped the ranges in favor of the mandatory minimums, and never considered the ranges again ...." *Koons*, 138 S. Ct. at 1788.[5]

By contrast, as previously discussed, the bulk of Davenport's sentencing proceeding was spent discussing the appropriate amount of downward departure--*in terms of offense levels,* and *starting from Davenport's otherwise-applicable Guidelines range*--in order to ensure that the recommended sentence of 63 months was

---

5. Similarly, in the case in which the Tenth Circuit concluded that defendants subject to a mandatory minimum that exceeded their otherwise-applicable Guidelines range could never be eligible for § 3582(c)(2) sentencing relief, the court noted: "the district court never relied on Defendants' *applicable* guideline ranges in determining the amount of departure from their 20—year mandatory minimum sentences." *United States v. C.D.*, 848 F.3d 1286, 1292 n.4 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2618 (2018). Instead, the court simply selected specific sentences below the mandatory minimum without resort to the applicable Guidelines ranges or offense levels.

consistent with the Guidelines; even government counsel at sentencing stated that the recommendation for a 63-month sentence was tied to the Guidelines. The court never spoke, much less exclusively spoke, of the downward departure in terms of a certain percentage from the mandatory minimum. Indeed, the only reference made to such a percentage was defense counsel's offhand remark that a sentence of 63 months was equivalent to about one-half of the 120-month mandatory minimum.[6] Although there was some confusion at sentencing as to whether a departure of three or four levels was necessary in order to reach the parties' recommended sentence of 63 months--apparently due to some miscounting of adjustments for minor role and acceptance of responsibility--the court in announcing the sentence, as well as in the final

---

6. Moreover, the figure of "63 months," in the absence of contrary indications, itself suggests in this context that the sentence was based on the Guidelines and not calculated from or purely in terms of the mandatory minimum: this figure represents the precise end of a Guidelines range, while it would amount to a bizarre 47.5 % downward departure from the 120-month mandatory minimum.

judgment, made clear that the court departed downward from Davenport's otherwise-applicable Guidelines range and not from his mandatory minimum.  That is, the court calculated his criminal history category as III and the offense level, after other adjustments, as 27; the resulting sentence range was 87-108 months, entirely below the 120-month mandatory minimum.  It then granted a reduction of three offense levels, which resulted in an offense level of 24 and a Guidelines range of 63-78 months, to reflect substantial assistance.  The court then imposed a sentence at the bottom of the Guidelines range, and in accordance with the plea agreement, of 63 months.

Davenport's sentencing therefore stands in stark contrast to *Koons*, which the Court in *Hughes* recognized is a "narrow exception to the general rule that, in most cases, a defendant's sentence will be 'based on' his Guidelines range."  *Hughes*, 138 S. Ct. at 1776.  Here, the court departed down three offense levels from Davenport's otherwise-applicable Guidelines range based

on his cooperation in order to arrive at a sentencing range that was consistent with the recommended sentence of 63 months. The otherwise-applicable Guidelines range, far from fully "dropping out" of the picture, was clearly "part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes*, 138 S. Ct. at 1775. *See also id.* at 1776 (a defendant's sentence is "based on" the since-amended Guidelines range "absent clear demonstration*,* based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines").

Moreover, as stated, the record also reflects that the parties considered and applied the Guidelines in fashioning the 63-month recommendation. Government counsel at the sentencing hearing expressly stated that the recommendation was "tied to the guidelines." Sentencing Tr. at _____ (pin cite unavailable because transcript in draft form). And again, as stated, looking at the 63-month sentence from different angles, the court concludes that it was a product of the Guidelines. The

59

court would not have imposed the same sentence regardless of the Guidelines. *See Hughes*, 138 S. Ct. at 1776 (a defendant's sentence is "based on" the since-amended Guidelines range "absent clear demonstration*,* based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines").

Accordingly, the court concludes that, even though Davenport was originally subject to a mandatory minimum, he was nonetheless sentenced "based on" the Guidelines range applicable to his offense for the purpose of statutory eligibility under § 3582(c)(2).

## IV. CALCULATION OF AMENDED SENTENCE

Davenport's original base offense level under USSG § 2D1.1 was 32. According to the Statement of Reasons (doc. no. 315), after a two-level decrease for his role in the offense pursuant to USSG § 3B1.2 and a three-level decrease for his acceptance of responsibility pursuant to USSG § 3E1.1, his total offense level was 27. Davenport's criminal history category was III. The

applicable Guidelines range was 87 to 108 months; however, because a mandatory minimum of 120 months applied, his Guidelines range was 120 months. *See* USSG § 5G1.1(c)(2). The court granted the government's motion for a three-level downward departure for substantial assistance pursuant to USSG § 5K1.1 and § 3553(e), which both reduced Davenport's total offense level to 24 and authorized the court to give a sentence below the mandatory minimum. The adjusted Guidelines range, starting from the original range of 87 to 108 months, was 63 to 78 months. Davenport was sentenced to 63 months.

Under Amendment 782, Davenport's amended base offense level is 30. After the adjustments for role and acceptance of responsibility are applied, his amended total offense level is 25. Because Davenport originally received a three-level downward departure for substantial assistance, USSG § 1B1.10(b)(2)(B) authorizes the court to reduce Davenport's sentence to one "comparably less"

than the amended Guidelines range.[7]  After this departure, the resulting offense level is 22.  Davenport's criminal history category is III, so the final amended Guidelines range is 51 to 63 months.  Originally, Davenport received a sentence at the bottom of the range; hence, his amended sentence on the drug-trafficking charge should be 51 months.  However, in the event that he has served longer than he would have served on a 51-month sentence,

_____

7. USSG § 1B1.10(c) cmt. n. 4(b) suggests that if a court opts to give a sentence "comparably less" than the amended Guidelines range, then, in order to account for a substantial assistance departure granted in the original sentencing, it should calculate a new sentence that is a similar *percentage* lower than the amended Guidelines range.  However, this court will account for the departure by calculating a new sentence that is the same number of *levels* (three) below the amended Guidelines range, in order to ensure that Davenport receives the same sentence that would have been imposed had Amendment 782 been in effect at the time of his initial sentencing.  *See Glover*, 686 F.3d at 1206 ("The goal is to treat a defendant sentenced before the amendment the same as those sentenced after the amendment.").

In any event, both the percentage-wise and level-wise calculations produce the same result in this case: a sentence approximately 27 % lower than the bottom of the Guidelines range.

factoring in good-time credit and any other factors relevant to the Bureau of Prisons' calculation, then his sentence should be time served. *See* USSG 1B1.10(b)(2)(C) ("In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.").

### V.  PUBLIC SAFETY AND POST-SENTENCING CONDUCT

In considering whether and by how much to reduce an eligible defendant's sentence, the court must consider any concerns regarding public safety or post-sentencing conduct, as well as the factors enumerated in 18 U.S.C. § 3553(a).  *See* USSG § 1B1.10 cmt. n. 1(B).

The government and the U.S. Probation Office agree with Davenport that no concerns regarding public safety or Davenport's post-sentencing conduct exist in this case. The court agrees.  The court has considered the § 3553(a) factors and found no reason to award Davenport anything less than the sentence reduction for which he is eligible.

* * *

For the above reasons, it is ORDERED, pursuant to 18 U.S.C. § 3582(c)(2), that the sentence of imprisonment of 63 months previously imposed on defendant Jason Terrell Davenport (as reflected in the last judgment issued) is reduced to 51 months or, in the event that he has served longer than he would have served on a 51-month sentence, factoring in good-time credit and any other factors relevant to the Bureau of Prisons' calculation, then his sentence is reduced to time served.

DONE, this the 29th day of August, 2018.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE